# EXHIBIT

# C



**MASTER EQUIPMENT LEASE**
Lease No. 0010951

| | | | |
|---|---|---|---|
| LESSOR: | FIRSTAR EQUIPMENT FINANCE, a division of Firstar Bank, N.A. (herein called the "Lessor") 400 Highway 169 South, Suite 300 St. Louis Park, MN 55426 | LESSEE: | ALAN ROBERTS (herein called the "Lessee") P.O. BOX 1221 ALEXANDER CITY, AL 35011 |

1. **LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the personal property described herein and in Supplement(s) which may be executed by Lessor and Lessee contemporaneously herewith or from time to time hereafter and which are incorporated herein ("Supplement(s)"), and all attachments, additions, accessories, replacement parts, substitutions and repairs incorporated in such personal property and/or affixed thereto and proceeds thereof, (herein called the "Equipment") made pursuant to the terms of this Master Equipment Lease (herein called the "Lease"), as supplemented by the terms and conditions set forth in the appropriate Supplement identifying such items of Equipment. The parties may from time to time, by mutual agreement, add other items of equipment to this Lease for such terms and at such rates as may be agreed by execution of additional Supplement(s), and this Lease shall control and be effective as to such additional items of equipment as though the same were set forth herein. For purposes of construing this Lease, all Supplement(s) attached hereto shall be incorporated herein and form a part hereof. No respective Supplement shall be construed as an independent separate lease and whenever reference is made herein to "this Lease" it shall be deemed to include each of the various Supplements identifying all items of Equipment, all of which constitute one undivided lease of the Equipment.

2. **TERM.** This Lease shall be in force with respect to each item of Equipment for a period beginning with the Commencement Date (or if earlier with respect to any item of Equipment, the commencement of the corresponding Interim Rent Period) as set forth in the corresponding Supplement(s), and ending at the expiration of the period ("Expiration Date") set forth in the corresponding Supplement(s) ("Lease Term").

3. **RENT.** Lessee shall pay to Lessor the rent and other amounts relating to each item of Equipment set forth in the corresponding Supplement(s) ("Rent") for use of the Equipment for the Lease Term. Rent shall be payable by United States currency, cashier's check, certified check, regular check, or withdrawal by Lessor from Lessee's bank account via electronic transfer, as Lessor in its sole discretion may from time to time direct. The Rent has been computed on the basis of the estimated total cost of the Equipment to the Lessor. The Lessee hereby authorizes and instructs the Lessor to make any necessary alteration of the Rent to the extent that the actual cost of the Equipment differs from said estimated total cost shown in the corresponding Supplement.
In addition to rent, which is payable only from the commencement date as provided above, Lessee agrees to pay Interim rent. The period between the date of Equipment delivery and acceptance as specified in the Delivery and Acceptance Certificate and the Commencement Date shall be referred to as the "Interim Rent Period". Lessee will pay to Lessor on the Commencement Date Interim Rent at the daily equivalent for the number of days from the date of funding to the Lease Commencement Date. Interim Rent at the daily equivalent will be calculated by dividing the appropriate monthly rental factor by 30.

4. **WARRANTIES.** LESSOR, NOT BEING THE MANUFACTURER OF THE EQUIPMENT NOR THE MANUFACTURER'S AGENT, MAKES NO EXPRESS OR IMPLIED WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO: THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR A PARTICULAR PURPOSE; THE DESIGN OR CONDITION OF THE EQUIPMENT; THE QUALITY OR CAPACITY OF THE EQUIPMENT; THE WORKMANSHIP IN THE EQUIPMENT; COMPLIANCE OF THE EQUIPMENT WITH THE REQUIREMENTS OF ANY LAW, RULE, OR SPECIFICATION; PATENT OR OTHER INTELLECTUAL PROPERTY RIGHT INFRINGEMENTS OR LATENT DEFECTS, IT BEING AGREED THAT THE EQUIPMENT IS LEASED "AS IS" AND THAT ALL RISKS AS BETWEEN LESSOR AND LESSEE ARE TO BE BORNE BY LESSEE. LESSOR IS NOT RESPONSIBLE FOR DELIVERY OR INSTALLATION OF, OR FOR ANY REPAIRS OR SERVICE TO, THE EQUIPMENT. LESSOR IS NOT RESPONSIBLE FOR LOSS OF PROFIT OR FINANCIAL OR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, OR FOR TORT OR OTHER CONTRACTUAL LIABILITY OR INTERRUPTION OF BUSINESS, WHICH MAY BE DIRECTLY OR INDIRECTLY CAUSED BY OR ATTRIBUTABLE TO THE INADEQUACY OF THE EQUIPMENT. All proceeds of any warranty recovery from the manufacturer or supplier of the Equipment shall be used at the discretion of Lessor to either repair or replace the affected Equipment. NOTWITHSTANDING THE FOREGOING, LESSEE'S OBLIGATION TO PAY RENT OR ANY OTHER SUM REQUIRED UNDER THIS LEASE SHALL BE AND IS ABSOLUTE AND UNCONDITIONAL, REGARDLESS OF ANY CLAIM OR OFFSET.

5. **TITLE.** Title to each item of Equipment leased hereunder shall remain with the Lessor at all times and the Lessee shall have no right, title or interest therein except as expressly set forth in or in any lease schedule to this Lease. Lessee agrees to keep the Equipment free of any liens and encumbrances throughout the term of the Lease. In the event this Lease is construed to not be a lease with respect to any item of Equipment, this Lease shall, with respect to such item of Equipment be deemed to be a security agreement, and Lessee grants Lessor a security interest in the Equipment, the proceeds of any sale thereof, and the assignment, lease or sublease thereof.
All items of Equipment shall at all times be and remain personal property notwithstanding that any such Equipment may now or hereafter be affixed to realty. The Equipment shall be delivered to the location specified in the Supplement with respect thereto and shall not thereafter be removed from such location without the written consent of Lessor.

6. **TAXES, REGISTRATION, AND LICENSING.** Lessee agrees to comply with all laws, regulations and orders relating to the Lease and the Equipment and to pay when due as additional rent, all assessments, license fees, taxes (including but not limited to sales, use, excise, personal property, franchise, state income, gross receipts, ad valorem, stamp and federal highway use tax) and all other governmental charges, fees, fines or penalties whatsoever relating to the Lease or Equipment whether payable by Lessor or Lessee, on or relating to the Equipment or the use, registration, rental, transportation, delivery, ownership or operation thereof and on or relating to the Lease and the Supplements executed in connection therewith. Lessee shall reimburse Lessor, upon demand, for all personal property taxes paid by Lessor with respect thereto. Lessee shall file all other returns required therefor and furnish copies to Lessor; provided, however, that the foregoing shall not include any federal and state income taxes of Lessor. Lessee shall obtain such licensing and registration of the Equipment as is required by federal, state and local law or regulation.

C:\temp\trueleasem.tmp                                                              1

7. **INDEMNIFICATION.** Lessee assumes liability for, and hereby agrees to indemnify, protect and hold harmless Lessor, its agents, employees, officers, directors, successors and assigns from and against any and all liabilities, obligations, liens, losses, damages, injuries, claims, demands, penalties, actions, costs and expenses, including reasonable attorney fees (hereinafter collectively called "**Losses**") of whatsoever kind and nature (including any of the foregoing arising in connection with latent or other defects, or any claim for patent, trademark, copyright or other intellectual property right infringement or under the doctrine of strict liability), arising out of the manufacture, possession, use, condition, operation, installation, alteration (with or without Lessor's consent), repair, maintenance, ownership, selection, delivery, leasing, removal or return of the Equipment, by Lessee, its agents, its employees or any permitted sublessees, or arising out of any failure on the part of Lessee to perform or comply with conditions of this Lease or by operation of law. The indemnities and assumptions of liabilities and obligations provided herein shall continue in full force and effect notwithstanding expiration or other termination of this Lease.

8. **LESSOR'S PERFORMANCE OF LESSEE'S OBLIGATIONS.** If Lessee shall fail to duly and promptly perform any of its obligations under this Lease with respect to the Equipment, Lessor may, at its option, perform any act or make any payment which Lessor deems necessary for the maintenance and preservation of the Equipment and Lessor's title thereto, including payments for satisfaction of liens, repairs, taxes, levies and insurance, and all sums so paid or incurred by Lessor, together with any delinquent payment charges pursuant to Section 15 hereof, and any reasonable legal fees incurred by Lessor in connection therewith, shall be paid by Lessee to Lessor upon demand. The performance of any act or payment by Lessor as provided herein shall not be deemed a waiver or release of any obligation or default on the part of Lessee. The Lessor may, at its option, increase the amount of the Rent for any item of Equipment and hold such increase in escrow to apply to the payment of any of the foregoing charges if escrowing such amount is deemed advisable by Lessor to assure payment of such charges by Lessee.

9. **USE AND ASSIGNMENT.** Lessee will cause the Equipment to be operated and maintained in accordance with any and all applicable manufacturer's manuals or instructions, governmental regulations, applicable laws, any insurance policies and any warranties of the manufacturer with respect to the Equipment and for its originally intended business purpose only. Lessee shall not move the Equipment from its place of installation and domicile without Lessor's prior written consent. **LESSEE SHALL NOT ASSIGN THE LEASE OR ASSIGN OR SUBLET ANY ITEM OF EQUIPMENT WITHOUT LESSOR'S PRIOR WRITTEN CONSENT. ANY ASSIGNMENT OR SUBLEASE ENTERED INTO BY LESSEE WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR SHALL BE NULL AND VOID.** Lessee agrees that Lessor may assign, sell or encumber all or any part of this Lease, the Equipment and the Rent hereunder, and, upon written notice, Lessee will unconditionally pay to such assignee all Rent and other sums due on or to become due under this Lease. Lessee shall not assert against any such assignee and/or mortgagee any defense, counterclaim or offset that Lessee may have against Lessor. This Lease inures to the benefit of the parties' permitted successors or assigns.

10. **ALTERATIONS.** Without the prior written consent of Lessor, Lessee shall not make any alterations, additions or improvements to the Equipment. All permitted alterations, additions and improvements of whatsoever kind or nature made to the Equipment shall become the property of Lessor upon expiration or earlier termination of this Lease except that any of the foregoing which are removed without damage to the Equipment, without adversely affecting the Equipment's commercial value or originally intended use, shall remain the property of Lessee. No advertising or insignia shall be placed on the Equipment without the prior consent of Lessor, unless the Lessor deems the Equipment to be rolling stock on the applicable Supplement, in which case Lessee hereby consents to the placement of Lessee's insignia.

11. **EVENTS OF DEFAULT.** The occurrence of any of the following events shall constitute a default by Lessee (herein called "**Event of Default**") in the performance of Lessee's obligations hereunder:

i) failure of Lessee to pay Rent by a method designated by Lessor within five (5) days after it is due, or failure of Lessee upon demand to pay any other amount required to be paid herein or under any other agreement with Lessor; or

ii) failure of Lessee to timely perform any covenant, condition or obligation, other than the payment of Rent and the obligations under Section 22 hereof, required to be performed by Lessee under this Lease (and such failure shall continue for five (5) days after written notice by Lessor) or under any material contract, loan or lease agreement or the occurrence of an event of default under any other agreement with Lessor; or

iii) failure of Lessee to perform or observe any covenant required to be performed or observed by Lessee under Section 22 hereof;

iv) failure by Lessee or any guarantor of obligations of Lessee to Lessor ("**Guarantor**") to generally pay its debts as such debts become due, and Lessee or any Guarantor continues generally not paying Lessee's or any Guarantor's debts as such debts become due for a period of three (3) days after written notice given by Lessor; Lessee or any Guarantor becomes insolvent or bankrupt or makes an assignment for the benefit of creditors or consents to the appointment of a trustee or receiver, or a trustee or a receiver shall be appointed for Lessee or any Guarantor for a substantial part of their respective property without its consent and shall not be dismissed for a period of thirty (30) days, or bankruptcy, reorganization or insolvency proceedings shall be instituted by or against Lessee or any Guarantor and, if instituted against Lessee or any Guarantor, shall not be dismissed within thirty (30) days of institution; Lessee's or any Guarantor's business is dissolved, terminated or is discontinued; or Lessee or any Guarantor dies; or

v) any representation or warranty of a material fact made by Lessee herein or in any certificate or statement furnished to Lessor in connection with this Lease, proves untrue in any material respect as of the date made;

vi) Lessee or any Guarantor sells, transfers or disposes of all or substantially all of its assets or property or a material portion thereof, or merges with any other entity or engages in any form of corporate reorganization or recapitalization without the prior written consent of Lessor; or

vii) a transfer of ownership of the Lessee's or any Guarantor's outstanding voting stock or other action (issuance of new shares, sale of treasury shares, purchase of outstanding shares, dividends, etc.) resulting in a change in the controlling interest of Lessee or any Guarantor without the prior written consent of Lessor; or

viii) Lessee attempts to move, sell, or transfer any item of Equipment from its place of installation, domicile or use as described in Supplement(s) attached hereto, or encumber any item of Equipment or part with possession, sublet or assign this Lease or any item of Equipment without Lessor's prior written consent.

ix) Any indebtedness Lessee may now or hereafter owe Firstar Bank N.A. or any of its affiliates ("**Firstar**") shall be accelerated following a default thereunder or, if any such indebtedness is payable on demand, payment thereof shall have been demanded by Firstar.

12. **REMEDIES.** Upon occurrence of any Event of Default and at any time thereafter so long as the same shall be continuing, Lessor may, at its option, without further notice, exercise one or more of the following with respect to any or all Equipment, as Lessor in its sole discretion shall elect, all of which are hereby authorized by Lessee, to the extent permitted by and subject to compliance with any mandatory requirements of applicable law then in effect:

i) terminate this Lease effective immediately; or

ii) cause Lessee, upon written demand and at Lessee's expense, to promptly return any or all Equipment under any or all Supplement(s) to Lessor pursuant to Section 16 hereof; or

iii) take possession of any or all Equipment under any or all Supplement(s) and remove the same without liability for injuries suffered through or loss caused by such repossession; or

iv) by written notice to Lessee, cause Lessee to pay Lessor (as liquidated damages for loss of a bargain and not as a penalty) on the date specified in such notice an amount equal to the sum of (A) the aggregate of all installments of the Rent which would be due and unpaid as of the first of the month following the date of the notice of Lease termination, plus (B) the then fair market value of the Equipment as reasonably determined by Lessor or the

present value of the remaining payments and residual value, whichever is greater, each determined as of the first of the month following the notice of Lease termination (such greater amount the "Termination Amount"). In no event shall this amount be less than the amount necessary to preserve Lessor's original projected return. Lessee shall also pay to Lessor all other amounts then due with respect to such Equipment and all other costs and expenses for the balance of the Lease Term.

y) proceed by appropriate action either by law or in equity to enforce performance by Lessee of the applicable covenants of this Lease or to recover damages for the breach thereof.

Upon return of the Equipment to Lessor, Lessor shall use reasonable efforts to sell or lease any or all Equipment as is commercially reasonable given the existing conditions without recourse or warranties of any kind, or otherwise hold such Equipment, as Lessor determines is commercially reasonable. In addition, Lessee shall pay Lessor all costs and expenses incurred by Lessor as a result of Lessee's default hereunder or the termination hereof including without limitation, reasonable attorney's fees, and costs arising out of repossession and disposal of the Equipment. Provided Lessee has previously paid to Lessor the Termination Amount, Rent due and owing, and other costs and expenses incurred pursuant hereto, Lessee shall be entitled to the proceeds of any such sale, disposition, or re-lease of the Equipment to the extent they do not exceed the Termination Amount. Any excess shall be retained by Lessor. To the extent the Equipment is re-leased by Lessor, Lessee shall be credited the present value of the lease rental stream at the discount rate equal to the rate inherent in such new lease. Furthermore, to the extent the parties to this Lease need to determine the present value of any monies due under the Lease, the parties agree that the discount rate shall be such "prime rate" as of the date of the applicable Supplement.

In addition, Lessee shall continue to be liable for all indemnities under this Lease and for all reasonable attorney fees and other costs and expenses resulting from the termination hereof and/or the exercise of Lessor's remedies, including placing any Equipment in the condition required by Section 16 hereof. No remedy referred to in this Section is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. Any repossession or subsequent sale or lease by Lessor of the Equipment shall not bar an action for a deficiency as herein provided and the bringing of any action or the entry of judgment against the Lessee shall not bar the Lessor's right to repossess any or all Equipment. No expressed or implied waiver by Lessor of any default shall constitute a waiver of any other default by Lessee or a waiver of any of Lessor's rights.

13. NOTICES. Any notices or demands required to be given herein shall be given to the parties in writing and shall be deemed given when mailed by certified mail, postage prepaid, or by confirmed facsimile to the address herein set forth or in such other address as the parties may hereafter substitute by written notice.

14. REPAIRS; LOSS AND DAMAGE. Lessee, at its own cost and expense, shall keep the Equipment in good repair, condition and working order including but not limited to compliance with all applicable recall orders and shall furnish all parts, mechanisms and devices and servicing required therefor. All such parts, mechanisms and devices shall immediately become the property of Lessor and part of the Equipment for all purposes hereof. Lessee agrees to immediately inform Lessor, in writing, of any damage to the Equipment or caused by the Equipment or the existence of any Casualty Occurrence as hereinafter defined. All risk of loss, damage, theft or destruction with respect to the Equipment shall be borne by Lessee. If Lessor determines that any Equipment is lost, stolen, destroyed, or substantially damaged for any reason, or in the event of any condemnation, confiscation, theft or seizure or requisition of title to or the use of such Equipment (herein called "Casualty Occurrence"), Lessee will, at the option of Lessor, either (a) replace the same with like Equipment in good repair or (b) promptly pay to Lessor an amount equal to all Rent with respect to the Equipment suffering a Casualty Occurrence due and payable as of the first month following the date of the Casualty Occurrence, the Termination Amount, and all other amounts then due with respect to such Equipment, less any physical damage insurance proceeds paid to Lessor as a result of said Casualty Occurrence. As of the date on which the Termination Amount is paid, the Rent for such Equipment shall cease to accrue and the term of this Lease as to such Equipment shall terminate and (except in case of the loss, theft or complete destruction), Lessor shall be entitled to recover possession of the Equipment. Lessee hereby appoints Lessor its agent to dispose of any Equipment suffering a Casualty Occurrence at the best price obtainable on an "AS IS, WHERE IS" basis without recourse or warranties of any kind. Provided that Lessor has been paid the Termination Amount and all Rent or other sums due and owing as to such Equipment, Lessee shall be entitled to the proceeds of such sale to the extent they do not exceed the Termination Amount of such Equipment. Any excess shall be paid to Lessor.

15. INSPECTION. Lessor, or its employees or agent, has the right but not the obligation to inspect the Equipment at any reasonable time or place, and for such purpose enter any building or place where said Equipment is located.

16. RETURN OF EQUIPMENT. Except upon exercise of any option to purchase granted in the corresponding Supplement(s) or performance of the termination provisions of a TRAC Lease Supplement, if applicable, in the event of any termination of this Lease as to any item of Equipment as provided herein (whether by reason of an Event of Default or otherwise), Lessee, at its own risk and expense, will immediately return the Equipment as described in such Supplement(s) to Lessor, at such location(s) as Lessor shall designate, freight and insurance prepaid. Lessee hereby acknowledges that any such designation is reasonably convenient to Lessee. All Equipment so delivered by Lessee to Lessor will be in the same condition as when delivered to Lessee, reasonable wear and tear resulting from authorized use thereof excepted.

In the event that the Equipment is not returned within three (3) days after any such termination date, Lessee shall pay as additional rent an amount equal to the greater of the fair market daily rental as determined by Lessor or the daily equivalent of Rent as described in the applicable Supplement(s) for each day from and including the termination date until and including the day on which the Equipment is returned in acceptable condition as determined by Lessor. Payment of additional rent hereunder does not relieve Lessee of its obligation to return the Equipment immediately at such time as set forth herein or of any other obligation hereunder.

17. FINANCIAL REPORTS. With respect to each proposed Supplement to this Lease, Lessee consents to any reasonable credit investigation and review by Lessor. During the Lease Term, Lessee and each Guarantor agrees to provide Lessor quarterly and annual financial information upon requested by Lessor.

Lessee hereby warrants and represents that any statements and data submitted in writing to Lessor are true and correct.

18. LESSEE'S REPRESENTATIONS. Lessee represents, warrants and agrees that (a) this Lease constitutes a legal, valid and binding obligation of Lessee enforceable against Lessee in accordance with the terms hereof; and (b) there are no pending or threatened actions or proceedings before any court or administrative agency which will adversely affect the condition, business or operations of Lessee or any of its subsidiaries or the ability of Lessee to perform its obligations under this Lease.

19. SECURITY DEPOSIT. If required by Lessor with respect to any item of Equipment, Lessee agrees to provide Lessor with the security deposit set forth on the corresponding Supplement ("Security Deposit"). Lessee hereby grants Lessor a security interest in and to any such deposit required hereunder by Lessor. The Security Deposit shall constitute collateral securing Lessee's performance of the terms and conditions of the Lease. If an Event of Default by Lessee has occurred, as defined in Section 11 herein, Lessor, at its option, may apply the proceeds of the Security Deposit to any resulting deficiency, and Lessee shall promptly restore the required Security Deposit. Upon expiration of the Lease Term, provided Lessee shall have complied with all terms and conditions of the Lease and no Event of Default has occurred and is continuing, Lessor shall, at Lessee's option (i) apply the proceeds of the Security Deposit to the purchase price payment as outlined on the corresponding Supplement, if applicable, or (ii) return the Security Deposit to the Lessee.

20. FURTHER ASSURANCES. Lessee shall execute and deliver to Lessor, upon Lessor's request, such further documents, instruments, and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this Lease and Lessor's rights hereunder, any assignment hereof and the interest of any assignee. In furtherance of the foregoing, Lessee agrees that Lessor may, with respect to titled equipment, at its option, title the

C:\temp\treclease.tmp                                                        5

Equipment showing Lessor as owner of the Equipment, as lienholder with respect to the Equipment, or both. Lessor's filing of itself as lienholder only, rather than as owner or owner and lienholder, shall in no way in and of itself be construed as passing any right, title, or interest, including ownership interest, in the Equipment to Lessee.

Lessee authorizes Lessor to file, at Lessor's option, any such instruments (including financing statements and certificates of title) without Lessee's signature, and if such signature is required by law. Lessee appoints Lessor as Lessee's attorney-in-fact to execute such items. Such appointment is irrevocable and shall be deemed to be coupled with an interest. Lessee shall reimburse Lessor for all expenses incurred by Lessor in connection with this provision, including the costs of searches and all filings. Any such filing or recording shall not in and of itself be a factor in determining whether or not the Lease is intended as security.

21. **WAIVER.** The failure of Lessor to insist, in any instance, upon strict performance by Lessee of any of the covenants of this Lease, or to exercise any option herein contained, shall not be construed as a waiver of such covenant or option, but the same shall continue and remain in full force and effect. The receipt by Lessor of Rent, with knowledge of the breach of any covenant or condition hereof, shall not be deemed a waiver of such breach and no waiver by Lessor of any provision hereof shall be deemed to have been made unless expressed in writing and signed by Lessor.

22. **INSURANCE.** At its own expense, Lessee shall obtain and maintain for the Lease Term, physical damage and liability insurance. The physical damage insurance shall insure against loss or damage to each item of Equipment including, without limitation, loss by fire, explosion, wind, hail, flood, malicious mischief, vandalism, theft, collision, upset, overturn, glass breakage and any other physical loss to each item of Equipment. For any titled Equipment, the amount of insurance shall be less than the actual cash value of the Equipment. For any other type of Equipment, the amount of insurance against loss or damage shall not be less than the new replacement cost of the Equipment. Such policy providing insurance for the damage to the Equipment shall name Lessor as Loss Payee as Lessor's interest may appear and shall not have a deductible amount in excess of $2,500 without the express written consent of Lessor and shall contain a clause requiring the insurer to give Lessor 30 days prior written notice of any material alteration in the terms of or cancellation of such policy.

The liability insurance shall provide coverage for the liability of Lessee and Lessor for damages arising out of the ownership, maintenance, use, and operation of the Equipment. Such liability insurance shall also provide a contractual liability provision for purposes of insuring the performance of Lessee hereunder this Lease. Liability insurance shall have minimum limits of $1,000,000.00 per person, $1,000,000.00 occurrence and $1,000,000.00 property damage, or $1,000,000.00 combined single limit and shall have no deductible without the express written consent of Lessor. Each insurance policy shall name Lessee as the named insured and Lessor as an additional insured and shall contain a clause requiring the insurer to give Lessor 30 days prior written notice of any material alteration in the terms of the policy or of the cancellation thereof. To the extent that Lessee may have liability insurance in excess of the minimum limits required herein, Lessor shall be named as an additional insured on any such coverage. Each policy shall be primary without right of contribution from any other insurance which is carried by Lessor and shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured.

Lessee or Lessee's insurance agent(s) shall furnish to Lessor evidence satisfactory to Lessor that such insurance coverage is in or will be in effect as of the Commencement Date (or if earlier with respect to any item of Equipment, the commencement of the corresponding Interim Rent Period) set forth in the applicable Supplement or the date of delivery and acceptance by Lessee, whichever is earlier, provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Lessee further agrees to give to Lessor prompt written notice not more than five (5) days after any damage to, or loss of, the Equipment or damage or injury caused by the Equipment. Lessee shall, at its own expense and cost, have the duty and responsibility to make all proofs of loss and take all other steps necessary to effect collections from underwriters for any loss under any of the above mentioned policies. The proceeds of such insurance, at the option of Lessor, shall be applied (a) toward the replacement, restoration or repair of the Equipment or (b) toward payment of the obligations of Lessee hereunder. Lessee hereby appoints Lessor as Lessee's Attorney-in-Fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts for loss or damage under any such insurance policy.

Any policies of insurance carried in accordance with this Section shall provide that with respect to the interests of Lessor in such policies, the insurance shall not be invalidated by any action or inaction of Lessee or any other person (other than Lessor) including, but not limited to, any misrepresentation and shall insure Lessor's interests, as they appear, regardless of any breach or violation of any warranties, declarations, or conditions contained in such policies by Lessee or any other person (other than Lessor).

Lessee shall obtain the liability insurance required hereunder on an occurrence basis rather than a claims made basis.

Lessee's obligation to keep the Equipment insured as provided herein shall continue until the Equipment is returned to Lessor pursuant to Section 16 hereof.

23. **TERMINATION OPTIONS OF LEASE**

a) If Lessee is expressly granted an option to acquire the Equipment under the provisions of the corresponding Supplement(s), and Lessee has appropriately exercised such option, upon expiration of the Lease Term and so long as no Event of Default, as defined in Section 11 hereof, has occurred and is continuing, Lessor shall sell and Lessee shall purchase the Equipment for such amount as set forth in such Supplement(s) which amount shall be paid upon Lease termination, plus any applicable taxes. Lessor shall, on the date of purchase, transfer to Lessee by bill of sale, without recourse or warranty of any kind, express or implied, all of Lessor's right, title and interest in and to such Equipment. Any such purchase option can only be exercised by Lessee's written notice to Lessor not later than 120 days prior to the expiration of the Lease Term.

b) If a renewal rental is set forth in any Supplement(s) relating to any item of Equipment, Lessee may, at its option, renew the Lease thereof by giving Lessor written notice thereof not less than 120 days before the expiration of the original term thereof or the anniversary date of any prior renewal thereof, and paying to Lessor the amount of the renewal rental, provided that such renewal option is not exercisable if Lessee is in default under this Lease. Upon such notification and payment, the lease of any such item of Equipment shall be renewed for the period provided for in the corresponding Supplement at the stated renewal rental, but the other provisions and conditions of this Lease shall continue unchanged.

c) In any circumstance not subject to the alternatives described in (a)-(b) above or in any applicable Supplement, Lessee's return obligations upon termination of this Lease, as to any items of Equipment, shall be as provided in Section 16.

24. **JURISDICTION** LESSEE HEREBY CONSENTS TO JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS SITTING IN THE STATE OF MINNESOTA FOR PURPOSES OF RESOLVING ALL DISPUTES OF ANY NATURE WHATSOEVER REGARDING THE LEASE, OR ANY TRANSACTION CONTEMPLATED HEREBY, AND LESSEE HEREBY WAIVES OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF JURISDICTION OR VENUE IN THE FEDERAL OR STATE COURTS OF MINNESOTA. Lessor and Lessee agree that a summons and complaint commencing an action or proceeding in any such court shall be properly served and shall confirm personal jurisdiction if served personally, by certified mail to it at its address designated pursuant to the Lease, or as otherwise provided under the respective rules of the state or federal courts of Minnesota.

25. **MISCELLANEOUS.** The parties hereto acknowledge that no waiver, amendment, re lease or modification of this Lease shall be established by conduct, custom, or course of dealing, but solely by an instrument in writing duly executed by the parties hereto.
In the event Lessee should fail to pay Lessor any Rent or any other sum required to be paid when due, Lessor may impose a late charge of up to 5% of the amount of the rent but in any event not more than permitted by applicable law. Payments thereafter received shall be applied first to delinquent payments and then to current installments. An additional 5% will be assessed each month as long as the payment is delinquent.
If there should be more than one party executing this Lease to Lessee, all obligations hereunder to be performed by Lessee shall be the joint and several liability of all such parties. Any provision of this Lease which is unenforceable in and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Time is of the essence with respect to this Lease. The captions in this Lease are for convenience only and shall not define or limit any of the terms hereof.
Lessee agrees that it shall reimburse Lessor all of Lessor's costs and expenses (including attorneys' fees and court costs, if any) of any nature whatsoever incurred by Lessor (i) to enforce its rights or remedies as provided in this Lease or as otherwise provided by law or (ii) to resolve any dispute regarding this Lease.
This Lease consists of the foregoing and the Supplements, Exhibits, Schedules, Addenda, and Riders referred to herein and correctly sets forth the entire Lease agreement between Lessor and Lessee. No agreements or understandings shall be binding on either of the parties hereto unless specifically set forth in this Lease. THIS LEASE SHALL BE OF NO FORCE AND EFFECT UNTIL ALL REQUIREMENTS SET FORTH HEREIN ARE SATISFIED AND THIS LEASE IS ACCEPTED IN WRITING BY AN AUTHORIZED AGENT OF LESSOR IN ST. LOUIS PARK, MINNESOTA.
THIS LEASE SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA (WITHOUT REGARD TO THE LAWS OF CONFLICT OF ANY JURISDICTION) AS TO ALL MATTERS INCLUDING, WITHOUT LIMITATION, MATTERS OF VALIDITY, INTERPRETATION, CONSTRUCTION, EFFECT, PERFORMANCE AND REMEDIES.
26. **FACSIMILE DOCUMENTS/SIGNATURES.** Lessee agrees that for all documents received by Lessor from Lessee or any third party via facsimile (hereinafter "Facsimile Documents"), the following provisions apply:

1) All Facsimile Documents are deemed to be duplicate originals under all applicable evidentiary rules and are not subject to any limits on their admissibility, authentication or use by Lessor; and Lessee waives any objections to Lessor using Facsimile Documents in any court proceedings for any purpose;
2) Facsimile Documents will be deemed "originals" for all purposes (including under any applicable statute of frauds, UCC 2-201, and the Uniform Photographic Copies of Business and Public Records as Evidence Act); and the facsimile signatures contained on any Facsimile Documents shall be deemed an original signature for all purposes;
3) Lessee shall promptly deliver the original of any Facsimile Documents to Lessor and in no case, later than ten (10) business days, or Lessor may deem Lessee in default under this Agreement upon written notice;
4) To the extent Lessor is subject to any claim, defense, cost, expense, damage or penalty or fine (including reasonable attorneys fees) as a result of relying on any Facsimile Documents, Lessee shall unconditionally indemnify and hold harmless Lessor from any of such claims at no cost to Lessor.

Lessee initial ✓ AR / /

IN WITNESS WHEREOF, the parties hereto through a duly authorized representative have executed this Lease as of this 30 day of MARCH , 2000.

LESSEE:
ALAN ROBERTS

By: /s/ Alan Roberts
Print Name: ALAN ROBERTS
Title/SSN: PRESIDENT

By: 
Print Name: 
Title/SSN: 

LESSOR:
FIRSTAR BANK, N.A.

By: 
Print Name: 
Title: 

C:\temp\tradeforms.tmp


**FIRSTAR**
*Bank Without Boundaries*

SUPPLEMENT NO. 001
TO MASTER EQUIPMENT LEASE NO. 0010951
(TRAC LEASE)

LESSOR.     FIRSTAR EQUIPMENT FINANCE,        LESSEE:   ALAN ROBERTS
            a division of Firstar Bank, N.A.            (herein called the "Lessee")
            (herein called the "Lessor")                P.O. BOX 1221
            100 Highway 169 South, Suite 300            ALEXANDER CITY, AL 35011
            St. Louis Park, MN 55426

1. **Term and Commencement Date.** The Lease Term for the Equipment covered by this Supplement shall commence on the date Lessee executes the herein below Delivery and Acceptance Certificate or the date on which Lessor funds the acquisition of the Equipment, whichever is earlier. ("Commencement Date") and shall continue for a period of 48 months. Upon delivery of the Equipment to Lessee, Lessee shall determine if the same is satisfactory to Lessee and, if appropriate, execute and deliver to Lessor a Delivery and Acceptance Certificate in form satisfactory to Lessor.

2. **Rent.** As rent during the term of the Lease, Lessee hereby agrees to pay Lessor the sum of $5,976.83 monthly in arrears during the Term hereof on the day of each month, corresponding to the Commencement Date, beginning with the month immediately following the Commencement Date month. All rent is subject to sales and/or use tax whenever applicable. If the Commencement Date does not occur within sixty (60) days after this Supplement is executed by Lessee, Lessor may, upon written notice to Lessee, increase the amount of the Rent as deemed necessary by Lessor to reflect any increases in market financing rates.

3. **Security Deposit.** No. If "yes", Lessee hereby agrees to deposit with Lessor the sum of $ as a security deposit ("Security Deposit") and not as an advance payment of Rent.

4. **Depreciable Life.** The Equipment covered by this Supplement has a depreciable life of 3 years.

5. **Rolling Stock.** If Rolling Stock, Lessor deems the Equipment to be rolling stock for purposes of Section 10 of the Master Equipment Lease.

6. **Projected Value.** The Projected Value of the Equipment is 30.00% of the estimated total cost of the Equipment as set forth below. The parties acknowledge that the Projected Value is the current estimate of the fair market value of the Equipment as of the Expiration Date.

7. **Termination.** Upon expiration of the Lease Term with respect to such Equipment and so long as no Event of Default, as defined in Section 11 of the Master Equipment Lease, has occurred and is continuing, Lessee shall sell such Equipment as agent of Lessor to the highest bona fide bidder and shall render an accounting of such sale to Lessor and, as a final payment of Rent, transmit the Projected Value (as defined above) to Lessor. If the sale proceeds received by Lessee are less than the Projected Value, Lessee shall immediately remit to Lessor an amount equal to the shortfall. If the sale proceeds received by Lessee exceed the Projected Value, any excess shall be retained by the Lessee.

It is anticipated that Lessee will sell the Equipment as required under this paragraph 7 promptly upon expiration of this Lease with respect to such Equipment on behalf of Lessor. If Lessee does not sell the Equipment on behalf of Lessor, Lessor will sell such Equipment at wholesale as soon as possible after the expiration or cancellation of this Lease or any extension thereof with respect to such Equipment and determine the rent adjustment in accordance with the provisions of this paragraph. Such rental adjustment shall be paid by the Lessee within 30 days after the date Lessor sells such Equipment. If Lessee does not sell the Equipment on behalf of Lessor, Lessee agrees to pay Lessor a disposal fee of $300 for each item of Equipment disposed of by Lessor. In the event Lessee should fail to pay Lessor the Projected Value upon the expiration of the Lease Term, Lessee shall pay to Lessor a delinquent payment charge at a rate pursuant to Section 25 of the Master Equipment Lease, until the Projected Value is paid to Lessor.

8. **Tax Indemnity.** This supplement is entered in to on the basis that under the Internal Revenue Code of 1986, as amended (the "Code"), Lessor shall be entitled to (1) Modified Accelerated Cost Recovery System ("MACRS") deductions pursuant to section 168 of the Code on the basis that the Lessor has an unadjusted basis in the Equipment equal to the Estimated Total Cost, that the applicable depreciation method is the 200 percent declining balance method switching to straightline when optimal, that the applicable recovery period is 3 years and that the applicable convention is the half year convention, (2) current deductions for interest expense accrued with respect to indebtedness incurred to finance purchase of the Equipment and (3) to realize as gross income with respect to the transactions contemplated by the Lease (including the purchase of the Equipment) only Rent and Termination Amount in the amounts and accrued at the times set forth in this Supplement and any interest payable on late payments thereof (any failure of this clause (3) to be true herein referred to as an "Inclusion"), and (4) treat the Lease as a "Qualified Motor Vehicle Agreement" as defined in Section 210 of the Tax Equity and Fiscal Responsibility Act of 1982 and section 7701(h) of the Code.

If Lessor shall (1) lose the right to claim or shall suffer any disallowance or recapture of or, in good faith, shall determine that it is not entitled to claim all or any portion of any MACRS deductions or interest deductions (or if Lessor would have lost, recaptured or had disallowed such deductions if Lessor had sufficient gross income in the applicable taxable year against which to apply such deductions), (2) be deemed liable for income tax on gross profit, revenue or income as a result of an Inclusion, (3) be unable to so treat the Lease as a Qualified Motor Vehicle Agreement or (4) lose any other intended tax benefit as a result of any subsequent change in the Code, including, but not limited to a tax rate change (each of clauses (1) through (4) referred to as a "Tax Loss") with respect to any item of Equipment, then, promptly upon written notice to Lessee that a Tax Loss has occurred, Lessee shall reimburse Lessor in a lump sum payment, the amount determined below.

The reimbursement shall be that lump sum amount that, in the reasonable opinion of Lessor, after deduction of all taxes required to be paid by Lessor with respect to the receipt of such sum under the laws of any federal, state, foreign or local government or taxing authority, shall preserve Lessor's after tax discounted cash flow rate of return on equity, cash flows and book income based on FASB 13, assumed by Lessor in entering into this Lease. The reimbursement shall take into account the effects of any interest, penalties and additions to tax required to be paid by Lessor as a result of such Tax Loss and all taxes required to be paid by Lessor as a result of any payments pursuant to this paragraph.

For purposes of determining tax effects under this paragraph 8, the term "Lessor" shall include, to the extent of interests, any affiliated group of corporations, and each member thereof, of which Lessor is or shall become a member and with which

C:\temp\tractopn.tmp

Lessor joins in the filing of consolidated or combined returns. All payments pursuant to this paragraph 8 shall be paid within ten (10) days after receipt by Lessee of notice from Lessor describing in reasonable detail the Tax Loss and the amount of the payment due hereunder.

All rights and privileges of Lessor from this paragraph 8 shall survive the expiration or termination of the Lease.

Lessee shall provide such information as Lessor may reasonably require from Lessee and its affiliates and anyone in current or prior possession of the Equipment to enable Lessor to fulfill its tax filing obligations.

9. **Vehicles.** If Vehicle Lessee hereby agrees to furnish Lessor with the paid receipt copy of all Federal Form 2290s filed for any such vehicle(s) leased from Lessor as proof of payment of federal highway use tax.

10. **Location; Inspection; Notices.** Lessee shall promptly notify Lessor of all details arising out of any change in the general geographic location on which any item of Equipment is used or in the specific location at which it is kept when not used, any alleged encumbrances thereon or any accident allegedly resulting from the use or operation thereof. Lessee agrees to comply with Department of Transportation Regulation 396.17 "Periodic Inspection," at its own cost and expense.

11. **Condition on Return.** Without affecting the obligations of Lessee as provided in paragraph 7 above, if the Equipment is required to be returned to Lessor pursuant to Section 16 of the Master Equipment Lease, or for any other reason, Lessee, at its own risk and expense, shall immediately return the Equipment at such location(s) as Lessor shall designate, freight and insurance prepaid and in the following condition:

I. 50% tread on tires - no recaps; 50% brakes.

II. Sheet Metal work - not more than $200.00 needed; no broken glass

III. Drive train (engine, transmission and rear axle) capable of performing to original requirements. No major overhaul of any components, for tractors or trailers, is seen in the foreseeable future.

IV. Provide evidence of maintenance per manufacturers specification with no indication of abuse.

Lessee hereby acknowledges that any such designated return location is reasonably convenient to Lessee.

12. **Additional Representations.** Lessee represents, warrants, covenants and certifies, under penalty of perjury, that (a) it intends for each item of Equipment to be used more than 50% in a trade or business of Lessee; (b) it has been advised that Lessor and not Lessee will be treated as owner of the Equipment for Federal income tax purposes and agrees to not take any action inconsistent with such treatment; and (c) this Lease constitutes a "Qualified Motor Vehicle Agreement" as defined in Section 210 of the Tax Equity and Fiscal Responsibility Act of 1982 and Section 7701(h) of the code.

13. **Equipment.** The following Equipment is hereby leased on the terms specified in this Supplement and this Supplement becomes a part of and subject to the terms and conditions of that certain Master Equipment Lease No. 0010951, dated 3/30/00, which, except as modified herein, remains in full force and effect. This Lease shall be of no force and effect until all requirements set forth herein are satisfied and this Lease is accepted in writing by an authorized agent of Lessor in St. Louis Park, Minnesota

14. **Other Terms or Conditions.** Following are other terms and conditions agreed to by the parties. None

| Qty | Vehicle ID NO. or Serial No. | Description | Equipment Cost |
|---|---|---|---|
| 1 | 1FUPCSZB2YLH32769 | NEW 2000 FREIGHTLINER TRACTOR MODEL FLD120 | 98,732.50 |
| 1 | 1FUPCSZB9YLH32770 | NEW 2000 FREIGHTLINER TRACTOR MODEL FLD120 | 98,732.50 |
| 1 | 1FUPCSZB0YLH32771 | NEW 2000 FREIGHTLINER TRACTOR MODEL FLD120 | 98,732.50 |
| | | Estimated Total Cost $ | 296,197.50 |

Equipment Installation and Domicile Address: P.O. BOX 1221
ALEXANDER CITY, Alabama 35011 /TALLAPOOSA County

**Lessee initial** AR

IN WITNESS WHEREOF, the parties hereto through a duly authorized representative have executed this Lease as of this 30 day of MARCH, 20 00.

LESSEE:
ALAN ROBERTS

By: Alan Roberts
Print Name: ALAN ROBERTS
Title/SSN: PRESIDENT

By: _____
Print Name: _____
Title/SSN: _____

LESSOR:
FIRSTAR BANK, N.A.

By: _____
Print Name: _____
Title: _____

C:\temp\tracsupm.smp



# DELIVERY AND ACCEPTANCE CERTIFICATE

Lessee: R & R FREIGHT COMPANY, INC.
P.O. BOX 1221
4125 WASHINGTON STREET
ALEXANDER CITY, AL 35011

The undersigned (herein called "Lessee") hereby certifies i). that all Equipment described on Supplement No. 002 Master Equipment Lease No. 0013834 or Exhibits attached thereto (the "Lease") between Firstar Bank, N.A. (herein called "Lessor") and Lessee, has been furnished, ii) that delivery and/or installation has been fully completed as required, iii) that Lessee has had a reasonable opportunity to inspect the Equipment, iv) that the Equipment is in conformity in all respects with the Lease, v) that there are no non-conformities upon which Lessee is assuming will be cured, and vi) that Lessee's acceptance of the Equipment has not been induced by any assurances by Lessor. Lessee will therefore not reject or revoke its acceptance of the Equipment.

Lessee represents, warrants, and agrees as follows that: i) the representations and warranties of Lessee in Section 18 of the Lease are true and correct on and as of the acceptance date below as though made as of that date; ii) Lessor did not select, manufacture, or supply the Equipment; iii) Lessor has acquired the Equipment in connection with the Lease; iv) Lessee has either received a copy of the Purchase Agreement by and between Lessor and the vendor of the Equipment on or before signing the lease contract or has approved such Purchase Agreement; v) the Equipment will not be used primarily for family, personal, or household uses; and vi) there has been no adverse change in the business or financial condition of Lessee or any Guarantor (as defined in the Lease) since the day that the most recent financial statement was submitted to Lessor.

Lessee acknowledges that Lessor is not liable for the performance of the Equipment and agrees that all Lease payments will be made regardless of Equipment operability. Any decals or metal plates supplied by Lessor will be affixed to the Equipment in accordance with instructions from Lessor.

In view of the above, the undersigned hereby authorizes Lessor to pay for the Equipment in accordance with the terms of Firstar Bank, N.A.'s purchase orders for the same.

Date: 3-30-2001
By: [signature]
Print Name: ALAN ROBERTS
Title/SSN: PRESIDENT

Dated: _____
By: _____
Print Name: _____
Title/SSN: _____

C:\temp\dnamst.tmp